IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION NO. |
| | ) | 1:25-CR-271-TWT-JEM |
| TERRY LEWIS BURSTON | ) | |
| | ) | |

**MOTION TO CLARIFY SCOPE OF THE ALPR SUPPRESSION ISSUE**

COMES NOW, the Defendant, TERRY BURSTON, and files this motion to clarify that the scope of evidence properly before the Court on his Amended Motion to Suppress Evidence Obtained Through Automated License Plate Reader Database Searches, docs. 38 and 59, extends to the aggregate capabilities of the surveillance network used to investigate him, and is not confined to the discrete captures the government elected to use against him in this prosecution. Mr. Burston also requests leave to supplement the evidentiary record on this issue. In support of this motion, Mr. Burston states the following.

This Court's Order of January 21, 2026 directed that, at the evidentiary hearing held February 2, 2026, the "[p]arties are only to elicit facts as to how the ALPR was used in this case."[1] The order and the hearing it governed took place five months before the Supreme Court decided *Chatrie v. United States* on June 29,

[1] Doc. 65 at 1-2.

2026.[2]

Now that *Chatrie* has been decided, Mr. Burston submits that continuing to read the order's limitation literally would exclude facts that *Chatrie* makes constitutionally material. Mr. Burston asks the Court to clarify that the appropriate scope of the evidence to be considered on the motion to suppress ALPR data is broader before facts material to the Court's consideration of this motion are foreclosed from the record.

In *Chatrie*, the Supreme Court held that police conducted a Fourth Amendment search when they acquired a person's location data, "even though for only a limited time, and from a third-party tech company."[3] Two hours of data, obtained under a warrant, from a company the user had affirmatively enrolled with, was a search.[4]

*Chatrie* further held that the Fourth Amendment inquiry does not turn on how much information the government obtained, particularly where that information came from an all-encompassing database:

> [O]fficials can select the time-limited set of materials they want from an all-encompassing database... The sweep of the official invasion is not made less because the government, with the benefit of hindsight, can

---

[2] *Chatrie v. United States*, 609 U.S. ___, 146 S.Ct. 2193 (June 29, 2026). The hearing on Docs. 28, 29, 41, 32, 33, 38, 59, and 47 proceeded on February 2, 2026, five months before *Chatrie* was decided.
[3] *Chatrie*, 146 S.Ct. at 2109.
[4] *Id*. at 2215.

pinpoint exactly which few hours of movements it wants to review.[5] That feature, the Court explained, "is, indeed, more a practical benefit to the government than a limit on its intrusive powers."[6] “[D]urational bounds on the data actually acquired do little to address the Fourth Amendment's concern about ‘a too permeating police surveillance’” when the police officials can select from an all-encompassing database.[7] The Fourth Amendment applies "regardless of 'the quality or quantity of information' the government obtains."[8] The Supreme Court stated that it has “never understood Fourth Amendment protections as kicking in only once an intrusion 'goes too far.'"[9]

What matters is not just what the government retrieved and used against Mr. Burston. It is the character of the database from which the government could, and did, draw: its size, its retention practices, its capacity to be queried across agencies and jurisdictions, and the range of capabilities, including natural language people search and, at other points in time, live video, that the network was built to perform. Limiting the evidentiary record to how the ALPR was used in this case, (meaning only the specific captures the government has elected to offer) would precisely exclude the facts *Chatrie* identifies as bearing on whether a search occurred at all.

---

[5] *Id*. at 2210.
[6] *Id*.
[7] *Id*.
[8] *Id*. (quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001)).
[9] *Id*. (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

A Government production in this case reflects approximately 552 captures of a single plate across 95 unique camera locations over approximately five months, drawn from a network that permits cross agency querying and feeds into at least one aggregation platform.[10] Whether that network's full capability, including capabilities available to the network generally but not necessarily deployed against Mr. Burston specifically, forms part of the record the Court considers. This is exactly the kind of question *Chatrie* makes outcome determinative. A hearing confined to the captures returned in this case risks omitting the evidence needed to answer it.

Mr. Burston respectfully requests that the Court:

1. Clarify that the scope of the ALPR suppression issue includes the aggregate capabilities, retention practices, and cross agency reach of the network used to investigate Mr. Burston, and is not limited to the specific captures the government has elected to offer;

2. Grant leave for the parties to supplement the record developed at the February 2, 2026 hearing with evidence addressing those capabilities, to the extent not already elicited, before the Court rules on Docs. 38 and 59; and

3. Order the government to produce the network audit records, query

---

[10] Defense Analysis of FLOCK LPR Evidence, App. A (Gov't Discovery Production NDGA-000757) (552 captures, 95 unique camera locations, Dec. 14, 2024 through May 17, 2025).

parameters, camera inventory and configuration by date, and complete result sets.

Mr. Burston is not asking the Court to reopen a ruling it has already made or to relitigate any issue already resolved. He asks that the record on a still pending suppression motion reflect the framework the Supreme Court announced after this Court's order was entered and after the hearing it governed had already taken place.

WHEREFORE, Mr. Burston requests that this motion be granted.

Dated: This 4th day of August, 2026.

Respectfully submitted,

*s/ Kendal D. Silas*
KENDAL D. SILAS
State Bar of Georgia No. 645959
Attorney for TERRY BURSTON

Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, GA 30303; 404/688-7530